UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE A. REYNOLDS,

                            Petitioner,                      Case No. 2:18-cv-13527
                                                                        Hon. Mark A. Goldsmith

v.

ERICK BALCARCEL,

                            Respondent.
_____/

**OPINION AND ORDER
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Joe A. Reynolds ("Petitioner"), a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Oakland Circuit Court of armed robbery, Mich. Comp. Laws § 750.529. People v. Reynolds, No. 332679, 2017 WL 4518902, at *1 (Mich. Ct. App. Oct. 10, 2017). Petitioner was sentenced as a fourth-time habitual felony offender to nine to twelve years' imprisonment. Id. The amended petition raises two claims: (1) insufficient evidence was admitted at trial to sustain Petitioner's conviction, and (2) the trial court erroneously scored the sentencing guidelines. The Court denies the petition because Petitioner's claims are without merit. The Court also denies Petitioner a certificate of appealability and deny permission to appeal in forma pauperis.

**I. Background**

At Petitioner's trial, Mayonaka Bray-Pointer testified that she was working the midnight shift at a Speedway gas station on October 18, 2015. Trial Tr. at 67 (Dkt. 10-6). Shortly before her shift was set to end, Bray-Pointer was cleaning the front of the store when a man approached

her and demanded money. Id. at 67-70. She felt a sharp object being pressed against her side, and she saw that the man had a knife. Id. 71-72. Pointer ran out of the gas station and called the police. Id. at 73-74. She saw the man run across the parking lot and leave in a white Pontiac Grand Prix. Id. at 74. Bray-Pointer suffered a minor puncture wound to her arm from the knife. Id. at 86. Bray-Pointer selected Petitioner and another man as possible perpetrators at a police station photographic lineup procedure. Id. at 87. She identified Petitioner in Court as her assailant. Id. at 77.

Police Officer Craig Francis testified that he was dispatched to the scene around 4:40 a.m. on the morning of the incident. Id. at 91. He received information that the suspect drove away in a white Pontiac Grand Prix. Id. at 92. He located a vehicle matching that description at a nearby apartment complex. Id. at 93. He looked into the parked car and saw a doubled-edged knife between the seat in the center console. Id. The car was impounded. Id. at 93-94.

Detective Christopher Belling testified that a knife was retrieved from the car after he obtained a search warrant. Id. at 102. He identified the knife recovered from the vehicle as well as another pocket knife found in the driver side door pocket. Id. at 102-103. A backpack was found in the vehicle that had a traffic citation inside with Petitioner's name on it. Id. at 104-105. Two pairs of gloves were also recovered from the car. Petitioner was subsequently arrested without incident. Id. at 105.

While Petitioner was in custody, he agreed to speak with Belling after waiving his Miranda rights. Id. at 107-108. Petitioner said he was living at a location in Pontiac a couple of miles from where his car was found. Id. at 109. He admitted that he had been at the Speedway previously, but he denied he was there on the morning of the incident. Id. at 109. Belling showed Petitioner

2

a part of the surveillance video depicting Petitioner entering the Speedway. Id. at 109-110. Petitioner then admitted that it was his car, and that he had been at the gas station. Id. at 110.

Petitioner admitted that he had some words with the clerk, but he denied that he had a knife in his hand. Id. at 111. When Petitioner was shown the part of the video that appeared to show him struggling with Bray-Pointer, he repeated that they just exchanged words. Id. When Petitioner was told that Bray-Pointer was injured during the struggle, Petitioner repeated that he only had a cell phone in his hand, denied demanding money from Bray-Pointer, and admitted that he may have asked her for a few dollars. Id. at 111-112.

The double-edged knife was sent to the Michigan State Police for testing. Id. at 124. The parties stipulated that a mixed DNA profile consisting of three separate donors was found on the tip of the knife, and no determination was made as to whose DNA was on the blade. Id. at 125.

Based on this evidence, the jury found Petitioner guilty of armed robbery, and he was subsequently sentenced as indicated above.

Petitioner was appointed appellate counsel, who filed a claim of appeal. Appellate counsel filed a brief on appeal raising two claims:

I. The evidence was insufficient to support the conviction for armed robbery; and

II. The trial court erred with regard to the scoring of OV-1 and OV-2 in violation of the United States and Michigan Constitutions.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion. Reynolds, 2017 WL 4518902. Petitioner subsequently filed a pro se application for leave to appeal in the Michigan Supreme Court, raising the same two claims. The application was denied by standard form order. People v. Reynolds, 910 N.W.2d 268 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." Harrington, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Sufficiency of the Evidence

Petitioner's first claim asserts that insufficient evidence was presented at trial to sustain his conviction. He argues that the evidence did not establish beyond a reasonable doubt that he was armed with a weapon to support that element of armed robbery. After reciting the applicable constitutional standard, the Michigan Court of Appeals denied the claim as follows:

> Viewed in the light most favorable to the prosecution, there was sufficient evidence for the jury to find defendant guilty of armed robbery beyond a reasonable doubt. Defendant was in the process of attempting to commit a larceny when he told the victim, Mayonaka Bray-Pointer, to 'give [him] the money' and to 'hurry up.' Defendant used force or violence against Bray-Pointer as evidenced by her testimony describing how defendant poked her with a knife. Defendant assaulted Bray-Pointer, and she suffered an injury when the knife punctured her skin. Defendant also put Bray-Pointer in fear. She testified that she was going to give defendant the money because she was scared, and she did not want to let him into the bulletproof enclosure around the gas station cash register because she did not know what defendant would do. Thus, the first element of armed robbery is met.
>
> Defendant takes issue with the second element of armed robbery on appeal. Defendant argues the evidence was insufficient to demonstrate that he was armed with a weapon. However, direct and circumstantial evidence indicate that defendant had a knife. Bray-Pointer testified that defendant had a knife in his hand, not a cell phone, and that she saw the silver tip. She said she was 'for sure' that it was a knife. Also, Bray-Pointer suffered an injury from the knife. The picture of Bray-Pointer's injury demonstrates that her skin was cut and she was bleeding. This cut is on her right arm near her elbow—the location where she felt a poke. Furthermore, the security camera stills from that night place defendant at the gas station on the date and at the time of this incident. The stills also show defendant's white Grand Prix driving away. According to Detective Christopher Belling, defendant admitted that it was him in the video at the gas station and that the white Grand Prix was his vehicle. When the police located this vehicle, two knives were found. One knife was photographed as being stuck between the driver's seat and the center console. Defendant admitted that the knives were his and that he knew they were in the car. Thus, there is sufficient evidence to find that defendant possessed a dangerous weapon.

5

> In addition, the evidence proved that, at the very least, defendant 'possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon.' Chambers, 277 Mich. App. at 7. The evidence demonstrates that Bray-Pointer believed that defendant had something that was a dangerous weapon. She testified that she felt the poke in her arm, was injured, and saw a silver tip. She also testified that she was scared of what defendant might do. The security camera stills show Bray-Pointer lean back and away from defendant, indicating that she is fearful. Thus, the evidence proves that defendant at least fashioned an article as a weapon, satisfying the second element of armed robbery.
>
> Furthermore, defendant's actions after the robbery demonstrate his consciousness of guilt. 'A jury may infer consciousness of guilt from evidence of lying or deception.' People v. Unger, 278 Mich. App. 210, 227; 749 N.W.2d 272 (2008). Consciousness of guilt is also demonstrated by evidence of flight, which includes fleeing from the scene of the crime. Id. at 226, quoting People v. Goodin, 257 Mich. App. 425, 432; 668 N.W.2d 392 (2003). Defendant told Detective Belling that he ran to his car. The stills show defendant's vehicle leaving the gas station shortly after Bray-Pointer reached the parking lot. His car was found parked and abandoned about a mile away from the gas station at apartments where defendant did not live. Defendant told Belling that he left his car there and went to the nearby school at around 5:00 a.m. Defendant also told Belling that he lost the gloves he was wearing at the school—gloves that were apparent in the stills. The fact that defendant fled from the scene and abandoned his car demonstrates his consciousness of guilt regarding the robbery.

Reynolds, 2017 WL 4518902, at *1-2 (modifications in original).

This decision did not unreasonably apply the clearly established standard governing sufficiency of the evidence claims. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he Jackson standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by

state law.'" Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

On habeas review, the Court must apply "[t]wo layers of deference" to claims challenging evidentiary sufficiency. McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-205 (6th Cir. 2009)). First, "deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; [second,] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." Tucker v. Palmer, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The Jackson standard is "exceedingly general" and, therefore, state courts are afforded "considerable leeway" in its application. Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

At root, Petitioner's argument amounts to an attack on the credibility of the victim's testimony that she saw Petitioner hold a knife to her side when he demanded her money. He asserts that he only was holding a cellphone. Setting aside the fact that the victim's testimony was corroborated by evidence that she suffered from a puncture wound and that a double-edged knife was found in the car Petitioner abandoned, the jury was free to base its guilty verdict solely on their assessment of the victim's credibility. On habeas review, a federal court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" McDaniel v. Brown, 558 U.S. 120, 133 (2010) (quoting Jackson, 443 U.S. at 326). The trier of fact clearly resolved questions of credibility in favor of the prosecution in this

7

case. The victim's testimony, if believed, established each of the elements of armed robbery beyond a reasonable doubt. Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

B. Sentencing Guidelines

Petitioner next asserts that the trial court erroneously assessed points when scoring the sentencing guidelines for the aggravated use of a weapon and the lethal potential of the weapon used. The Michigan Court of Appeals found as a matter of state law that the challenged variables were correctly scored. Reynolds, 2017 WL 4518902, at *3-5.

The claim is not cognizable because Petitioner was sentenced on April 7, 2016, under the advisory guidelines. See Sentencing Tr. (Dkt. 10-7). After People v. Lockridge, 498 Mich. 358 (2015), made the Michigan sentencing guidelines advisory rather than mandatory, a Michigan trial court's imposition of a sentence is "an exercise of the court's discretion" regardless of how the trial court may have been "guided by the sentencing guidelines." Holder v. Jackson, No. 1:17-CV-408, 2017 WL 3205762, at *4 (W.D. Mich. July 28, 2017). "The facts found to support the exercise of that discretion do not 'increase the penalty for the crime beyond the prescribed statutory maximum,' or 'increase the mandatory minimum.'" Id. (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) and Alleyne v. United States, 570 U.S. 99, 103 (2013)). Petitioner was sentenced after the Michigan Supreme Court decided Lockridge.[1] A claim that a trial court incorrectly scored offense variables under a State's sentencing guidelines is a state-law claim and

---

[1] Had Petitioner been sentenced under the pre-Lockridge mandatory sentencing guidelines, then this claim could have implicated his Sixth Amendment jury-trial rights if any of the guideline variables were scored based on facts not proven beyond a reasonable doubt. See Robinson v. Woods, 901 F. 3d 710, 716-718 (6th. Cir. 2018). Because Petitioner was sentenced under the post-Lockridge advisory sentencing guidelines, and because Petitioner's sentence, therefore, resulted from an exercise of the trial court's discretion, his Sixth Amendment rights were not implicated. See Apprendi, 530 U.S. at 490."

8

is not cognizable on federal habeas review. See Austin v. Jackson, 213 F.3d 298, 300-301 (6th Cir. 2000). The trial court's fact-finding regarding Petitioner's offense variable levels is, therefore, not "contrary to, or an unreasonable application of, clearly established federal law." Id.

As neither of Petitioner's claims merit relief, the petition will be denied.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of Petitioner's claims because they are devoid of merit. The Court will, therefore, deny a certificate of appealability.

If Petitioner chooses to appeal the Court's decision, however, he may not proceed in forma pauperis, because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. Conclusion

Accordingly, the Court (1) denies with prejudice the petition for a writ of habeas corpus, (2) denies a certificate of appealability, and (3) denies permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: April 6, 2020  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
                                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 6, 2020.

                                                            s/Karri Sandusky
                                                            Case Manager